Filed 2/25/22  P. v. Williams CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B303054 c/w B307686 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA006461) |
| v. | |
| MARC L. WILLIAMS, et al. | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge; Lauren Weis Birnstein, Judge. Reversed and remanded.

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant Marc Williams.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant Cobert Davis.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez, Ryan M. Smith and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Defendants Marc Williams and Cobert Davis appeal the summary denial of their petitions for resentencing under Penal Code section 1170.95.[1]  We conclude defendants' petitions should not have been denied as a matter of law, and remand for the court to appoint counsel and determine defendants' eligibility for relief under the statute.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Crimes, Conviction and Appeal*[2]

Over a two-week period in 1991, defendants engaged in a robbery spree – they committed some of the crimes together and others alone or with other accomplices.  One of the robberies they committed together resulted in the death of the victim, by heart attack.

"At approximately 3:30 p.m. on April 1, 1991, Archie O'Bryant, a 71-year-old man, was at home working in his garage, when he was robbed by defendants.  At 3:45 p.m., he came into his house and told his wife he had been beaten and robbed.  His head and finger were bloody.  He told his wife to call 9-1-1, which she did.  O'Bryant and his wife both spoke with the 9-1-1 operator.  O'Bryant told the operator he had been beaten and robbed by two Black men.  O'Bryant then sat down on the davenport and told his wife that one of the attackers held a shotgun to his stomach and the other hit him over the head with a pistol.  He did not know what they wanted or why they kept

---

[1]    All undesignated statutory references are to the Penal Code.

[2]    Our discussion of the underlying facts is taken from the opinion affirming defendants' convictions (*People v. Williams* et al. (Dec. 23, 1994, B078600) [nonpub. opn.]) of which we have taken judicial notice.

hitting him.[3]  After O'Bryant related his story to his wife, he had trouble breathing and died of a heart attack.  [¶]  The cause of death was a combination of arteriosclerotic heart disease and blunt force injuries.  The trauma assisted in his death in that the injuries had the effect of increasing O'Bryant's heart rate, blood pressure and strain on his heart.  It was the stress from the injuries, not the injuries themselves, which caused the heart attack; and the heart attack combined with the blunt force injuries caused death.  O'Bryant was pronounced dead at 4:51 p.m., although he had no vital signs as early as 4:37 p.m."  Defendants thereafter used O'Bryant's credit card three times on the day of the robbery.

Both Williams and Davis were convicted of first-degree murder, with a felony-murder special circumstance, and personal use of a firearm.

On appeal, defendants argued that the trial court erred in its instruction to the jury on the special circumstance.  The jury had been instructed with the 1990 version of CALJIC No. 8.80.1, which provided that the jury could not find the special circumstance true for a defendant unless it found that defendant was the actual killer, was an aider and abetter with intent to kill, or was a major participant acting with reckless indifference to human life.  Defendants argued in their appellate briefs that the court erred by not sua sponte instructing on the meaning of "actual killer" and "reckless indifference."  On December 23,

---

[3]     At the preliminary hearing, the detective testified that Mrs. O'Bryant told the police that one of the attackers "put a shotgun in his chest and kept asking for his 'pin number.'  He didn't know what that was so he repeated his social security number and the assailants continued to hit him with a gun."

1994, a prior panel of this division affirmed, holding that the terms were not used in a technical sense, so no duty to instruct on their meaning existed in the absence of a request. The court continued, "Moreover, any instructional error was harmless. The evidence was overwhelming that both defendants were actual killers, therefore any instructional error was harmless beyond a reasonable doubt. [Citation.] A defendant is an actual killer if that defendant's conduct was a substantial factor contributing to the victim's death.[4] (*People v. Pock* (1993) 19 Cal.App.4th 1263, 1272-1275.) Both defendants robbed O'Bryant in his garage, and it was that robbery which caused O'Bryant's heart attack. Defendants contend that O'Bryant's statements to his wife demonstrate that only one attacker beat O'Bryant while the other pointed a gun at him. Defendants conclude that only the assailant who beat O'Bryant was the actual killer, the other was an aider and abetter. We disagree. It was not the beating per se that killed O'Bryant, but the stress of the robbery that caused his heart attack.[5] Thus, both defendants were substantial causes of the heart attack. (See *People v. Anderson* (1987) 43 Cal.3d 1104, 1152, fn. 3 (conc. and dis. opn. of Broussard, J.) [death penalty

---

[4] At this point, the court, in a footnote, rejected Williams's argument that an act is not a substantial factor unless it is an intentional act done with conscious disregard for human life and likely to cause death.

[5] The court inserted a footnote reading: "This is not a case where one of the perpetrators waited in a getaway car while the other robbed the victim. Instead, both defendants participated in the attack on O'Bryant, even if only one defendant did the actual hitting while the other defendant kept O'Bryant in place with his weapon."

4

available for a defendant burglar who startles a resident who subsequently dies of a heart attack].)  Since both defendants were actual killers, any instructional error was harmless beyond a reasonable doubt."

**2.** ***Prior Habeas Petition***

On June 6, 2018, Davis filed a petition for habeas corpus in the trial court.  He relied on the intervening decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which set forth factors to be considered in determining whether a defendant was a major participant who acted with reckless indifference to human life.  In his petition, Davis argued that he was merely "an aid[er] an[d] abettor to the planning and robbery of Archie O'Bryant" and did not act with reckless indifference.

On September 13, 2018, the court (Hon. Lauren Weis Birnstein) summarily denied Davis's habeas petition.  The trial court's order indicated that it adopted the facts set forth in this division's prior opinion affirming the conviction, which was apparently attached to an informal return filed by the district attorney.  The trial court stated, "In the appellate opinion, the Court determined that there was overwhelming evidence that *both* defendants were Mr. O'Bryant's *actual* killers because the conduct of each was a substantial factor contributing to the victim's death.  The court stated that it was not the beating *per se* that killed the victim, but the stress of the robbery that caused his heart attack.  Thus, 'both defendants were substantial causes of the heart attack.'  [¶]  Because [Davis] was an actual killer he, of course, was a major participant in Mr. O'Bryant's death."  The

court found that the string of crimes Davis committed with Williams demonstrated reckless indifference.[6]

### 3. *Proceedings on Section 1170.95 Petitions*

    A.    *Williams*

On June 3, 2019, Williams filed a form petition for resentencing under Penal Code section 1170.95.[7] In his petition, he checked all the necessary boxes – among them, that he was

---

[6] Our review of the chronology set forth in this division's prior opinion indicates that the O'Bryant robbery/murder was the first known crime that both defendants committed together. Williams had committed a robbery the day before with "an unseen accomplice," but only Williams was convicted of that crime.

[7] The section 1170.95 petition in our appellate record is marked "received" on June 3, 2019. It is otherwise undated. There is a minute order from four months earlier, February 1, 2019, indicating that Williams's petition was received and set for proceedings on April 2, 2019. A minute order on April 2, 2019 continued proceedings to June 3, 2019 for the prosecution's response to the petition and indicated counsel would be appointed for Williams at that time. The reporter's transcript for June 3, 2019 shows the presence of a bar panel attorney, who was ready to be appointed, but neither the court nor counsel could find Williams's petition. Counsel and the trial court (Hon. Leslie E. Brown) also discussed the fact that the trial court had prepared a tentative ruling denying Williams's petition. Upon further review of the file, no petition for Williams could be found. Thereafter, a new petition for Williams was filed, the court appointed counsel, and counsel filed a preemptory challenge to Judge Brown, who had previously indicated an intention to deny the petition. The matter was transferred to a different judge (Hon. Upinder Kalra), who ruled on the section 1170.95 petition.

convicted of felony murder and was not the actual killer, did not act with intent to kill, and was not a major participant acting with reckless indifference to human life. The court appointed counsel. Prior to the prosecution filing an opposition, the trial court summarily denied the petition with a written order. The court stated that, having reviewed the Court of Appeal opinion on direct appeal, it was clear that Williams could not establish a prima facie case of eligibility for relief. Specifically, the court stated that "the Court [of Appeal] explicitly found that Petitioner was one of the actual killer[s] and not an aider and abettor."

Williams filed a timely notice of appeal.[8]

B.  *Davis*

On March 9, 2020, Davis filed a form petition for resentencing under section 1170.95, in which he made the same assertions as Williams. On July 1, 2020, the court (Judge Weis Birnstein) set the matter for a hearing the next day regarding the appointment of counsel. At the July 2, 2020 hearing, the court initially indicated its understanding that defendant's jury had been instructed on felony murder, and that the court would therefore be required to determine whether defendant was a major participant who acted with reckless indifference. The court stated its intention to appoint counsel. After further discussion, Judge Weis Birnstein recalled that she had previously ruled on Davis's habeas petition, and went off the record so the parties could review the ruling on the habeas petition. Back on the record, the court stated that the habeas ruling addressed the

---

[8]     Williams did not initially file a timely notice of appeal, but we granted him relief from default and 10 days in which to file a notice of appeal, with which he complied.

issues under *Banks*, and concluded it was now unnecessary to appoint counsel for Davis.

On July 29, 2020, the court summarily denied Davis's 1170.95 petition by written order. Just as Judge Kalra had reasoned in denying Williams's petition, Judge Weis Birnstein relied on the prior Court of Appeal decision to deny Davis's petition. She stated that the Court of Appeal determined, "that there was overwhelming evidence that *both* defendants were Mr. O'Bryant's actual killers because the conduct of each was a substantial factor contributing to the victim's death. The court stated that it was not the beating per se that killed the victim, but the stress of the robbery that caused his heart attack. Thus, 'both defendants were substantial causes of the heart attack.' [¶] Because Petitioner was an actual killer he, of course, was a major participant in Mr. O'Bryant's death. His behavior throughout these multiple, similar crimes, i.e. threatening death, beating victims in the head, and using a shotgun to terrorize, *a fortiori* demonstrate a reckless indifference to the grave risk of death he created by his actions in the O'Bryant crime. The evidence of defendant's individual culpability was overwhelming."

Davis filed a timely notice of appeal.[9] Following briefing, we consolidated the matters for oral argument and decision.

---

[9] The minute order which memorialized the court's ruling denying Davis's section 1170.95 petition erroneously characterized it as a habeas petition. For perhaps this reason, Davis attempted to challenge the ruling by filing a habeas petition with this court. We directed the superior court to file the petition as a notice of appeal.

## ***DISCUSSION***

Section 1170.95 provides an opportunity for resentencing for defendants who were convicted of murder on a theory of felony murder or natural and probable consequences. When a defendant files a petition for resentencing under section 1170.95, the trial court is to review it for facial sufficiency. If it is factually sufficient and the defendant requests counsel, the court must appoint counsel. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Once counsel is appointed, the matter is briefed and the court "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 971.)

9

Defendants contend, and the Attorney General now agrees, that the trial court erred by denying their petitions without allowing briefing by counsel for defendants.[10] (*Lewis, supra,* 11 Cal.5th at p. 957.) The only issue left for determination is whether that error was harmless. The error is one of state law, reviewed for prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis,* at pp. 957-958.) Under that standard, defendants have the burden to demonstrate a reasonable probability that they would have obtained a more favorable result had counsel been appointed. (*Id.* at p. 974.)

The Attorney General argues that the error is harmless as a matter of law because defendants were nonetheless ineligible for relief for two reasons: (1) the jury's true finding on the special circumstance precludes relief; and (2) the prior opinion of this court established that both defendants were actual killers. We disagree.

A.    *The Special Circumstance Finding Does Not Preclude Relief*

Defendants were convicted prior to the opinions in *Banks* and *Clark* which "construed the meanings of 'major participant' and 'reckless indifference to human life' 'in a significantly different, and narrower manner than courts had previously.' [Citation.]" (*People v. Smith* (2020) 49 Cal.App.5th 85, 93 (*Smith*), review granted July 22, 2020, S262835.) We have held

---

[10]    Counsel was appointed for defendant Williams, but the court denied the petition prior to briefing or a hearing. The Attorney General concedes this was error. Similarly, the Attorney General concedes the trial court erred by "terminating its order to appoint counsel" for Davis.

that a felony murder special circumstance which predates *Banks* and *Clark* is an insufficient basis on which a trial court may deny a petition for relief at the first stage, which determines only if the defendant is ineligible for relief as a matter of law. (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1179 (*Torres*). See also *People v. Mejorado* (2022) 73 Cal.App.5th 562, 571.) Because *Banks* and *Clark* "clarif[ied]" the law, a special circumstance which predated those cases does not necessarily satisfy the current, more narrow requirements. (*Torres,* at p. 1179.)[11]

---

[11] A number of cases have disagreed with *Torres*, and held that a pre-*Banks/Clark* special circumstance is a sufficient basis on which to conclude a defendant is ineligible for relief under section 1170.95, suggesting that the proper procedure for the defendant to raise *Banks* and *Clark* is via a habeas petition. (E.g., *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*), review granted Oct. 14, 2020, S264284; see also *People v. Nunez* (2020) 57 Cal.App.5th 78 (*Nunez*), review granted Jan. 13, 2021, S265918; *People v. Jones* (2020) 56 Cal.App.5th 474, 483-485 (*Jones*), review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 452 (*Allison*); *People v. Murillo* (2020) 54 Cal.App.5th 160, 173 (*Murillo*), review granted Nov. 18, 2020, S264978; *People v. Gomez* (2020) 52 Cal.App.5th 1, 16-17 (*Gomez*), review granted Oct. 14, 2020, S264033.) On appeal, the Attorney General cites to several of these cases and argues against *Torres*. We have already addressed and disagreed with *Galvan*'s analysis (*People v. York* (2020) 54 Cal.App.5th 250, 260-263, review granted Nov. 18, 2020, S264954). We also respectfully disagree with *Nunez, Jones, Allison, Murillo* and *Gomez*, and adhere to the rule we expressed in *Torres*. The Supreme Court will resolve the dispute in *People v. Strong* (Dec. 18, 2020, C091162), 2020 WL 7417057 [nonpub. opn.], review granted Mar. 10, 2021, S266606.)

The Attorney General argues, in the alternative, that even if *Torres* is correct and a pre-*Banks* and *Clark* special circumstance finding does not render the defendant ineligible for relief as a matter of law, any error was harmless. The argument continues that whether a defendant's conviction satisfies *Banks* and *Clark* is a legal determination which should be made de novo by this court on appeal. If the de novo determination shows that the *Banks* and *Clark* requirements were satisfied, any error by the court under section 1170.95 would be harmless. We have previously rejected this argument as well. The determination of whether a defendant was a major participant acting with reckless indifference within the meaning of *Banks* and *Clark* is a factual determination which cannot be conducted at this stage as a matter of law by simply reviewing the existing record. (*Smith, supra,* 49 Cal.App.5th at p. 95; contra *People v. Law* (2020) 48 Cal.App.5th 811, 816, 822, review granted July 8, 2020, S262490.) This is so because the factual record "is not the only consideration the trial court must take into account for purposes of section 1170.95. Where the record of conviction does not preclude a petitioner from making a prima facie showing that he falls within the statute's provisions as a matter of law, the petitioner is not confined to presenting evidence contained in the record of conviction in seeking relief." (*Smith*, at p. 95.)

B.       *The Prior Appellate Opinion Is Not Binding*

We now come to the reason given by both trial courts for denying defendants' section 1170.95 petitions (and defendant Davis's prior petition for habeas corpus) – that the prior opinion by a different panel of this court stated "[t]he evidence was overwhelming that both defendants were actual killers . . . ."

12

The California Supreme Court in *Lewis* confirmed that a trial court, in evaluating whether the moving defendant has established a prima facie case under 1170.95, may "look at the record of conviction." (*Lewis, supra,* 11 Cal.5th at p. 971.) This includes the prior appellate opinion. (*Id.* at p. 972.) However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or exercise of discretion.' [Citation.] As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)[12]

In *People v. Langi* (2022) 73 Cal.App.5th 972 [2022 WL 110250], Division Four of the First Appellate District addressed the issue of reliance on factual determinations in prior appellate opinions. In *Langi*, the defendant was one of four men who beat and robbed a group of men. One of the victims died after someone in defendant's group punched him, causing him to fall and hit his head. (*Id.* at p. *1.) On direct appeal, the court's opinion affirming defendant's conviction stated that defendant was the individual who threw the fatal punch. (*Id.* at p. *1.)

---

[12] At the time of the petitions filed in this case, and the Supreme Court's *Lewis* opinion, section 1170.95, subd. (d)(3) provided that, at "the hearing to determine whether the petitioner is entitled to relief," the parties may "rely on the record of conviction." As amended by Senate Bill No. 775, effective January 1, 2022, that clause has been removed; the statute instead provides that the court "may consider any evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." The parties have not briefed the effect of this amendment, and we do not consider it.

When defendant subsequently pursued a section 1170.95 petition, the trial court denied the petition on the basis that the appellate opinion had stated defendant was the one who had thrown that punch, and was therefore the actual killer. (*Id.* at p. *2.) On appeal, the court explained that the trial court treated the prior appellate opinion "as conclusively establishing that the jury found appellant guilty as the actual killer. Although understandable in view of explicit statements in this court's prior opinion, the trial court erred in treating those statements as conclusive." (*Id.* at p. *3.) "Despite the statement in our prior opinion that appellant threw the punch leading to the victim's death, for which the record does include evidence, the record as a whole leaves room to question that conclusion." (*Id.* at p. *4.) "The jury was not required to find, and did not necessarily find, that it was appellant who threw that punch. Read with the caution dictated by *Lewis*, the prior opinion does not conclusively establish that appellant was convicted as the actual killer." (*Id.* at p. *4.)

The observations by the *Langi* court apply equally here. Our division's prior opinion itself states that defendants were "convicted of felony murder." There is nothing in the opinion, or the limited record before us, confirming that the jury was required to find, or did find, that either defendant was the actual killer of O'Bryant. The opinion acknowledges only one defendant struck O'Bryant, and it is unknown which of the two defendants did so.

To the extent the Attorney General relies on the prior panel's conclusion that any jury instruction error was harmless because the evidence defendants were both actual killers "was overwhelming," the argument misperceives the limited nature of

14

the prima facie inquiry and fails to take into account the inconsistencies of the prior panel's opinion.[13]  The question before the trial court at the prima facie hearing is whether the petitioners would be entitled to relief if their factual allegations were proven.  (*Lewis, supra,* 11 Cal.5th at p. 971.)  The issue is not whether there was overwhelming evidence at trial that defendants were actual killers, but whether the record conclusively proves defendants would be unable to establish the contrary assertion in their petitions.  Given that the jury did not necessarily find that both were actual killers, the inconsistencies in the description of cause of death as described in the appellate opinion and defendants' ability to argue based on additional parts of the record, we cannot find the prior opinion's evaluation of the then-existing evidence preclusive.[14]

This is particularly so because the standard for determining "actual killer" has changed in the intervening years. While the prior panel of this division relied on the substantial factor standard of *People v. Pock, supra,* 19 Cal.App.4th at pages 1272-1275, recent authority has concluded the proper standard is whether the defendant "personally" killed the victim. (*People v. Garcia* (2020) 46 Cal.App.5th 123, 152.)  How the personally killed standard interacts with the felony murder

---

[13]    We emphasize, however, that no prima facie hearing, with counsel, was actually held for either defendant.  Our inquiry here is not whether the trial courts made erroneous determinations at prima facie hearings, but whether the trial court failures to hold such hearings was harmless.

[14]    The trial court's summary denial of Davis's habeas petition is similarly not controlling.  (*Torres, supra,* 46 Cal.App.5th at p. 1180, fn. 4.)

liability if the robbery itself (rather than only the beating) causes the death (*People v. Stamp* (1969) 2 Cal.App.3d 203, 210-211) is an issue not yet ripe for analysis given the limited scope of our review.

### *DISPOSITION*

The orders denying defendants' petitions for resentencing are reversed.  The matters are remanded for the court to hold hearings under section 1170.95, subdivision (c).


RUBIN, P. J.

WE CONCUR:



MOOR, J.



KIM, J.